UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MEKO GREGORY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:25-cv-00163-JAW |
| ) | |
| IQVIA HOLDINGS INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION TO DISMISS**

In a lawsuit for unlawful termination and retaliation brought pro se against a former employer, the defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff did not respond. The court grants the motion to dismiss, concluding that the plaintiff waived any objection and dismissal does not clearly offend equity, and, moreover, that the complaint fails to state a claim on which relief can be granted.

**I.   PROCEDURAL HISTORY**

On February 28, 2025, Meko Gregory commenced a civil action in the Superior Court of the state of Maine for Androscoggin County, Case No. ANDSC-CIV-2025-00040, alleging IQVIA Holdings, Inc. (IQVIA) unlawfully terminated and then retaliated against her for reporting corporate misconduct, in violation of state and federal law. *State Ct. R.*, Attach. 2, *Civ. Compl. for Retaliation, Wrongful Termination, Blacklisting, Cyber Harassment, and Fraudulent Acts* (ECF No. 8) (*Compl.*).

Ms. Gregory served IQVIA with the complaint on March 24, 2025, and IQVIA timely removed the case to the United States District Court for the District of Maine on April 14, 2025, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. *Notice of Removal* at 1 (ECF No. 1). IQVIA served Ms. Gregory with notice of the removal on the same day. *Id.*, Attach. 5, *Notice to Adverse Party*.

On April 21, 2025, IQVIA filed a motion to dismiss the complaint for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Def[.'s] Mot. to Dismiss* (ECF No. 5) (*Def.'s Mot. to Dismiss*). Ms. Gregory failed or declined to respond.

## II.   FACTUAL RECORD[1]

### A.   The Parties

Meko Gregory is a resident of Maine with a Master's degree in Public Health, specializing in Biostatistics, from Boston University. *Compl.* ¶ 7. IQVIA Holdings Inc. is an American multinational corporation involved in clinical research and health information technology. *Id.* ¶ 8. IQVIA conducts business in the state of Maine. *Id.* ¶ 6.

---

[1]    Consistent with the motion to dismiss standard, the Court relied on the complaint's well-pleaded facts. "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

### B. Plaintiff's Employment at IQVIA, Discovery of Unethical Conduct, and Disclosure to U.S. Senators

Ms. Gregory is a former employee of IQVIA. *Id.* ¶¶ 9, 14. In 2023, Ms. Gregory discovered unethical conduct at IQVIA while working on a clinical trial for Tezepelumab, a drug developed by Amgen Inc. *Id.* She found that IQVIA engaged in data manipulation practices known as "p-hacking" to produce results favorable to Amgen, despite data suggesting otherwise.[2] *Id.* ¶ 10. In addition, Ms. Gregory became concerned about the involvement of foreign entities, particularly Chinese nationals, who had access to sensitive American health data. *Id.* ¶ 11. In response to her concerns, Ms. Gregory sent a formal complaint to two United States senators she identifies as "Senators Individual B and Individual C," in which she outlined the unethical data practices and national security risks posed by IQVIA's operations. *Id.* ¶ 12.

### C. Plaintiff's Termination and Allegations of Retaliation

On August 1, 2023, Ms. Gregory was subjected to an impromptu meeting with IQVIA, after which she was laid off without any real justification. *Id.* ¶ 14. She believes she was the only person in her department laid off during this time. *Id.* Before August 1, 2023, Ms. Gregory had no difficulty obtaining employment interviews in her industry. *Id.* ¶ 15. Since her termination, however, she has been unable to obtain a single interview, which she reports is highly unusual in her field

---

[2] In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept the well-pleaded factual allegations in the amended complaint as true and resolve all inferences in favor of [Ms. Gregory]." *Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Cap., LLC*, 137 F.4th 6, 18 (1st Cir. 2025). The Court has no independent knowledge about the accuracy of these allegations and recites them as true in compliance with its obligations under Rule 12(b)(6).

3

and suggestive of blacklisting and employer interference. *Id.* ¶ 16. She alleges IQVIA has actively interfered with her ability to secure employment by shadow banning her job profile on platforms such as LinkedIn and Indeed, and by sending false recruiters offering fraudulent job opportunities, making it appear that Ms. Gregory is being considered for roles that do not actually exist. *Id.* ¶ 17. Ms. Gregory believes that these actions are part of a pattern of harassment aimed at preventing her from finding new employment due to the knowledge she holds and shared regarding IQVIA's misconduct. *Id.* ¶ 18.

### D. Unsuccessful Attempts at Administrative Relief

Ms. Gregory filed complaints with both the Equal Employment Opportunity Commission (EEOC) and the Maine Human Rights Commission (MHRC) to address what she views as unlawful retaliation and blacklisting. *Id.* ¶ 19. MHRC refused to accept her retaliation claim, despite clear evidence that she was blacklisted and unable to find work for over eighteen months as of the date of filing. *Id.* ¶ 20. She also did not find relief through the EEOC process. *Id.* ¶ 21.

### E. Allegations of Cyber Harassment and Intimidation

Attempting to draw attention to her case, Ms. Gregory tagged "Senator Individual B" in social media posts addressing her wrongful termination and blacklisting. *Id.* ¶ 22. Subsequently, "Individual A," an attorney and the wife of Senator Individual B, began cyberstalking and harassing Ms. Gregory online, particularly on TikTok. *Id.* ¶ 23. Specifically, Individual A reported Ms. Gregory's social media posts for misinformation in an attempt to have them removed and

4

threatened Ms. Gregory in comments, stating Ms. Gregory was not going to sue her. *Id.* ¶ 24. Ms. Gregory has had to file a formal complaint with the Federal Bureau of Intelligence (FBI) for cybercrimes due to Individual A's actions. *Id.* ¶ 25. The Plaintiff believes Individual A's actions are a coordinated effort to silence her and prevent her from speaking out about the retaliation she experienced. *Id.* ¶ 26.

### F. False Claims Against Other Employees

A current employee of IQVIA contacted Ms. Gregory on LinkedIn and shared that he or she was placed on administrative leave after filing an EEOC complaint. *Id.* ¶ 27. This individual, who Ms. Gregory identifies as "Employee 1," informed the Plaintiff that IQVIA falsely accused him or her of performing a data breach by accessing an Outlook account on their personal phone, despite IQVIA's instructions to do so. *Id.* Employee 1 also reported that screenshots from his or her photo album started disappearing mysteriously, a suspicious activity that may indicate IQVIA's involvement in unauthorized access to personal devices. *Id.* ¶ 28.

### G. Concerns of Hacking and Device Compromise

Plaintiff reports she has long been suspicious that IQVIA has gained unauthorized access to her personal devices, particularly after she worked remotely and connected her work computer to her home Wi-Fi network. *Id.* ¶ 29. She believes that IQVIA may have hacked her Wi-Fi to monitor her personal communications and interfere with her professional and personal life, causing her distress. *Id.* ¶ 30.

### III. THE PARTIES' POSITIONS

#### A. Meko Gregory's Causes of Action

Ms. Gregory brings five counts against IQVIA: retaliation in violation of federal law (Count 1), wrongful termination (Count 2), blacklisting and interference with employment opportunities (Count 3), cyber harassment and intimidation as to Individual A (Count 4), and fraudulent acts and deceptive practices (Count 5).

##### 1. Count 1: Federal Whistleblower Claim

Ms. Gregory alleges she engaged in protected whistleblower activity by reporting IQVIA's misconduct to two U.S. Senators and claims the Defendant "unlawfully retaliated against [her] by terminating her employment and blacklisting her from future opportunities." *Id.* ¶¶ 31-32.

##### 2. Count 2: State and Federal Retaliation Claim

In Count 2, Ms. Gregory claims IQVIA wrongfully terminated her employment "**for refusing to participate in or ignore unethical and illegal conduct**," actions she claims violative of "state and federal employment protections." *Id.* ¶¶ 33-34 (emphasis in original).

##### 3. Count 3: Blacklisting and Interference with Employment Opportunities

Turning to Count 3, the Plaintiff claims that, since her termination, she has faced unexplained employment rejections, suggesting an active effort by IQVIA to prevent her future employment. *Id.* ¶ 35. She avers blacklisting is an unlawful practice that directly harms her ability to earn a living. *Id.* ¶ 36.

### 4. Count 4: Cyber Harassment and Intimidation

Count 4 alleges cyber harassment and intimidation perpetrated by Individual A. Ms. Gregory asserts that "Individual A, acting in retaliation against Plaintiff's whistleblower disclosures, engaged in **targeted online harassment and intimidation**," adding, "[h]er actions were meant to **silence Plaintiff, discredit her claims, and interfere with her ability to seek justice**." *Id.* ¶¶ 37-38 (emphasis in original).

### 5. Count 5: Fraudulent Acts and Deceptive Recruitment

Finally, Count 5 alleges IQVIA "engaged in fraudulent practices by sending **false recruiters** and **shadow banning** Plaintiff from job platforms, interfering with her ability to seek legitimate employment." *Id.* ¶ 39 (emphasis in original). Ms. Gregory believes IQVIA may have also engaged in unauthorized access to personal devices, allegedly in further violation of her rights and personal security. *Id.* ¶ 40.

### 6. Requested Relief

To redress these alleged violations, the Plaintiff seeks: (1) a declaration that Defendant's actions constitute unlawful retaliation, blacklisting, wrongful termination, and fraudulent practices, (2) reinstatement to a comparable position or front pay in lieu of reinstatement, (3) compensatory and punitive damages for lost wages, emotional distress, reputation harm, invasion of privacy, and the psychological impact of cyber harassment, (4) attorney's fees, and (5) any further relief the Court deems just and proper. *Id.* at 5.

7

### B. IQVIA's Motion to Dismiss

IQVIA moves to dismiss Ms. Gregory's claims against it pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted. *Def.'s Mot. to Dismiss* at 1. The Defendant acknowledges that Ms. Gregory "separate[ed]" from her employment with IQVIA but argues the complaint "asserts vague and ambiguous claims" and "fails to assert any viable claims against Defendant in this case." *Id.*

#### 1. Count 1: Federal Whistleblower Claim

First, IQVIA responds to Plaintiff's Count 1, which alleges the Defendant unlawfully retaliated against Ms. Gregory for engaging in protected whistleblower activity, in violation of the Whistleblower Protection Act, codified at 5 U.S.C. § 2303(b)(8)-(9). *Id.* at 4. IQVIA avers the Whistleblower Protection Act protects federal civil service employees and applicants from retaliatory personnel practices by federal government agencies and, as such, Ms. Gregory's claim against IQVIA fails because she was neither a federal civil service employee nor is IQVIA a federal government agency. *Id.* (citing 5 U.S.C. § 2302(a)(2) (protections under the law are only available to individuals who are employed in or are applicants for federal civil service positions in certain federal executive agencies)). IQVIA insists Count 1 must be dismissed on this basis. *Id.*

#### 2. Count 2: State and Federal Retaliation Claims

Next, Plaintiff argues Ms. Gregory's claim of wrongful termination, brought as Count 2, fails to state a cognizable claim because her complaint "does not identify . . . what state or federal employment laws under which [she] asserts her wrongful

8

termination claim," and "[n]either Maine nor federal law recognize a common law claim for 'wrongful termination.'" *Id.* at 5 (citing *Lyons v. La. Pac. Corp.*, Civ. No. 02-29-B-K, 2022 U.S. Dist. LEXIS 6042, at *8 (D. Me. Apr. 5, 2002) (citation amended) ("Maine law does not recognize a common law claim for wrongful termination, thus Lyons has no possibility of recovery under any facts he might be able to establish") (in turn *citing Maine Bonding & Cas. Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1080 (Me. 1991) (acknowledging that Maine does not recognize a tort of wrongful discharge); *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 156 (Me. 1991) (stating that the Maine Supreme Court has not recognized a common law cause of action for wrongful discharge)). Thus, the Defendant asserts Ms. Gregory's claim of unlawful employment termination must be based on some statutory protection under either Maine or federal law, and "[o]ther than the reference to 5 U.S.C. [§] 2302(b)(8), addressed above, the Complaint does not identify any such statutory protections." *Id.* IQVIA submits Count 2 should be dismissed on this basis alone. *Id.*

Alternatively, IQVIA argues that, to the extent Ms. Gregory intends to assert a claim of wrongful termination under Maine's Whistleblowers' Protection Act (MWPA), 26 M.R.S. § 831 *et seq.*, Count 2 is still unavailing because the Plaintiff failed to properly allege that she has exhausted her administrative remedies for such a claim with the MHRC and/or the EEOC. *Id.* at 5-6. IQVIA characterizes Ms. Gregory's assertions that she "has made multiple attempts to seek justice through the [HMRC] and the [EEOC], but these efforts have been obstructed, leaving Plaintiff with no recourse," that she "filed complaints with both the EEOC and the [MHRC] to

9

address the unlawful retaliation and blacklisting[, but] MHRC refused to accept Plaintiff's retaliation claim," and that "[t]he EEOC process also led nowhere" as allegations which are "implausible on their face." *Id.* at 6 (quoting *Compl.* ¶¶ 3, 19-21). IQVIA contends the MHRC and EEOC "do not 'refuse to accept' complaints (although they may ultimately dismiss them and issue a right to sue." *Id.* (citing 5 M.R.S. § 4611) ("Any aggrieved person . . . may file a complaint under oath with the commission").

Accordingly, IQVIA argues, not only has Plaintiff failed to assert a claim under the MWPA, Plaintiff also (1) fails to plausibly allege whether she actually filed a complaint with the MHRC or EEOC; (2) fails to allege the date she filed any complaint with the MHRC or EEOC; and (3) fails to allege whether she actually received a right to sue notice from the MHRC or EEOC. IQVIA asserts all of this information is necessary in order to determine whether Plaintiff has actually and adequately pled a claim under the MWPA, whether Plaintiff has exhausted her administrative remedies, and whether certain defenses are available to Defendant. *Id.* IQVIA urges the Court to either dismiss Count 2 or, in the alternative, order Ms. Gregory to provide a more definite statement regarding Count 2 pursuant to Federal Rule of Civil Procedure 12(e). *Id.* at 7.

### 3.   Counts 3 and 5: Blacklisting and Fraudulent Acts

IQVIA addresses Counts 3 and 5 together, arguing each of these counts warrants dismissal because each respectively fails to identify the actual cause of action or theory of liability the Plaintiff intends to assert. *Id.*

In addition, the Defendant argues, "it is apparent that Counts 3 and 5 are both based on underlying claims of fraud and fail to meet the heightened pleading standards for such claims" applicable to state-law fraud claims asserted in federal court. *Id.* (citing FED. R. CIV. P. 9(b)) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13-15 (1st Cir. 2009)) ("[T]he case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud"). When Rule 9(b) applies, IQVIA avers, the moving party "must 'specify the who, what, where, and when' regarding the alleged fraud," *id.* at 8 (quoting *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020) (in turn quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004))). Here, IQVIA argues Ms. Gregory's general allegations of "fraudulent and malicious actions" by the Defendant, vague allegations that her inability to obtain employment subsequent to the termination of her employment with IQVIA "<u>suggests</u> blacklisting and employer interference" and she "<u>believes</u>" that Defendant has interfered with her ability to secure employment through shadow banning and sending false recruiters, and her "<u>suspicio[n]</u>" that IQVIA gained unauthorized access to her personal devices "fall well short of Rule 9(b)'s heightened pleading standard." *Id.* at 8-9 (quoting *Compl.* ¶¶ 4, 16-17, 29-30, 35) (Defendant's emphasis) (citing *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (1st Cir. 2013) ("[E]stablishing that something <u>possibly</u> happened is far

11

distant from the threshold particularity requirements that must be pled under Fed. R. Civ. P. 9(b)") (emphasis in original)).

####       4.     Count 4: Cyber Harassment and Intimidation

Finally, IQVIA urges the Court to dismiss Count 4, in which Plaintiff seeks redress for alleged cyber harassment and intimidation against Individual A, because Individual A is neither a party to this suit nor an alleged employee or agent of IQVIA, and thus Count 4 pleads no plausible cause of action against the Defendant. *Id.* at 9-10.

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz*, 669 F.3d at 55); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11

(1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán*, 734 F.3d at 103 (quoting *Morales-Cruz*, 676 F.3d at 224; *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V. DISCUSSION

United States District of Maine Local Rule 7(b) provides:

(1) Any objections or other response to a motion must be filed within 21 days after the motion is filed and must incorporate a memorandum of law. Any affidavits and other documents supporting the objection or response must be filed with the objection or response.

(2) If a timely objection or response is not filed, it is waived. . . .

D. ME. LOC. R. 7(b). Ms. Gregory did not file an opposition to IQVIA's motion to dismiss within the period provided by the rules (and indeed, she has still not responded) and, under First Circuit law, the Plaintiff's failure to object to the

13

Defendant's motion is itself a sufficient basis to grant that motion based on waiver. *ITI Holdings, Inc. v. Odom*, 486 F.3d 17, 18-19 (1st Cir. 2006) (affirming dismissal based on failure to object to motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)); *Wilson v. Clinton*, No. 2:17-cv-GZS, 2018 U.S. Dist. LEXIS 123231, at *5 (D. Me. July 24, 2018), *aff'd* 2018 U.S. Dist. LEXIS 157773 (D. Me. Sept. 17, 2018) ("Plaintiff's lack of objection to Defendants' motion to dismiss . . . may[ ]be deemed a waiver of objection to the argument and thus provides further support for Defendants' request for dismissal"); *Sullivan v. Town of Freeport*, No. 2:24-cv-00068-JAW, 2024 U.S. Dist. LEXIS 143446, at *1-2 (D. Me. Aug. 13, 2024) (same).

To make certain, however, that equity would not be offended by the dismissal of the complaint, the Court, in its discretion, independently reviewed the Plaintiff's complaint in light of the arguments made in the Defendant's motion to dismiss. *Sullivan*, 2024 U.S. Dist. LEXIS 143446, at *2 (citing *Cote v. Barnhart*, No. 1:12-cv-00081-NT, 2012 U.S. Dist. LEXIS 152863, at *2 (D. Me. Sept. 21, 2012), *aff'd* 2012 U.S. Dist. LEXIS 152040 (D. Me. Oct. 23, 2012) ("The only limitation on this discretion is that an order dismissing the case must 'not clearly offend equity' or be inconsistent with the Federal Rules of Civil Procedure") (quoting *Nepsk, Inc. v. Town of Houlton*, 283 F.3d 1, 7 (1st Cir. 2002)).

### A. Count 1: Federal Whistleblower Claim

First, as to Count 1, which alleges IQVIA violated the Whistleblower Protection Act by retaliating against Ms. Gregory for engaging in protected activity, *Compl.* ¶¶ 31-32, IQVIA correctly points out that Ms. Gregory does not have a

14

plausible pathway to relief under this federal statute for the simple reasons that she is not a federal civil service employee protected by 5 U.S.C. § 2303(b)(8)-(9) and IQVIA is not a federal government agency subject to that statute's provisions. *Def.'s Mot. to Dismiss* at 4. Thus, Count 1 "fail[s] to state a claim upon which relief can be granted" and warrants dismissal on this basis. FED. R. CIV. P. 12(b)(6).

    **B.**    **Count 2: State and Federal Retaliation Claims**

In Count 2, Ms. Gregory alleges wrongful termination in violation of state and federal employment protections. *Compl.* ¶¶ 33-34. IQVIA moves to dismiss this count on the grounds that she does not identify the employment law under which she brings her claim, that there is no common-law claim for "wrongful termination" in Maine or federal law and, alternatively, insofar as she intends to assert a claim of wrongful termination under the MWPA, that the claim fails because she has not properly alleged administrative exhaustion. *Def.'s Mot. to Dismiss* at 5-7.

As to IQVIA's first argument, IQVIA accurately observes that Ms. Gregory does not provide a legal authority pursuant to which she brings her wrongful termination claim. However, it is well-established that district courts "are required to construe liberally a pro se complaint and may affirm its dismissal only if a plaintiff cannot prove any set of facts entitling him or her to relief." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997)). While it is equally clear that "pro se status does not insulate a party from complying with procedural and substantive law," the First Circuit has ruled that "[t]he policy behind affording pro se plaintiffs liberal

15

interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." *Id.*

IQVIA reasonably infers Ms. Gregory may have intended to bring Count 2 pursuant to the MWPA and the Court thus proceeds to consider whether she may have a cognizable cause of action under that state law, over which this Court may potentially exercise supplemental jurisdiction. 26 M.R.S. § 833(1) provides, in relevant part, that "[n]o employer may discharge . . . because: . . . [t]he employee, acting in good faith . . . reports orally or in writing to . . . a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States." 26 M.R.S. § 833(1)(A). However, the statute proceeds to say that 26 M.R.S. § 833(1) "does not apply to an employee who has reported or caused to be reported a violation, or unsafe condition or practice to a public body unless the employee has first brought the alleged violation, condition or practice to the attention of a person having supervisory authority with the employer and has allowed the employer a reasonable opportunity to correct that violation, condition or practice." 26 M.R.S. § 833(2). 26 M.R.S. § 833(2) contains an exception, clarifying that prior notice to an employer is not required if the employee "has specific reason to believe that reports to the employer will not result in promptly correcting the violation, condition or practice." *Id.*

Here, even being afforded a liberal reading, the Court cannot conclude she has pleaded sufficient factual allegations to survive IQVIA's motion to dismiss Count 2.

To withstand a motion to dismiss brought pursuant to Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

Here, the Court concludes Ms. Gregory's claim that she "was wrongfully terminated for refusing to participate in or ignore unethical and illegal conduct," *Compl.* ¶ 33—to wit, "data manipulation practices," and "the involvement of foreign entities, particularly Chinese nationals, who had access to sensitive American health data," *id.* ¶¶ 10-11—does not withstand this test. In a non-exhaustive list of the factual deficiencies in her complaint with regard to Count 2, Ms. Gregory does not plead that she reported the unspecified "unethical and illegal conduct" to her supervisor before sharing this information with two unnamed U.S. Senators, as 26 M.R.S. § 833(2) requires, or that she was not required to first provide notice to her employer because she had "specific reason to believe that reports to the employer will not result in promptly correcting the violation, condition, or practice," in accordance with 26 M.R.S. § 833(2). Furthermore, Ms. Gregory provides only minimal detail regarding the "unethical and illegal conduct" she attributes to IQVIA, and does not provide the identity of "Senators Individual B and Individual C." Simply, the allegations in her complaint "are too meager, vague, or conclusory to remove the

17

possibility of relief from the realm of mere conjecture" and the Court concludes Count 2 warrants dismissal. *Tambone*, 597 F.3d at 442.[3]

### C. Counts 3 and 5: Blacklisting and Fraudulent Acts

The Court concludes Counts 3 and 5 warrant dismissal for a similar reason. Count 3 seeks relief for what she deems "blacklisting & interference with employment opportunities" and Count 5, for "fraudulent acts & deceptive practices (false recruiters, shadow banning, device hacking)." *Compl.* at 4-5. The Defendant is correct in its arguments both that Ms. Gregory neither provides the actual cause of action nor theory of liability she intends to assert on either of these counts, *Def.'s Mot. to Dismiss* at 7, and, more fatally, that she does not meet Rule 9(b)'s heightened pleading standard for claims of fraud by failing to "specify the who, what, where, and when regarding the alleged fraud." *Foisie*, 967 F.3d at 49 (internal quotation marks omitted). Ms. Gregory's hypothetical and speculative claims of what may have happened, *see Compl.* ¶¶ 4, 16-17, 29-30, 35; *Def.'s Mot. to Dismiss* at 8-9, do not meet this bar. *Juarez*, 708 F.3d at 280 ("establishing that something <u>possibly</u> happened is far distant from the threshold particularity requirements that must be pled under Fed. R. Civ. P. 9(b)") (emphasis in original).

### D. Count 4: Cyber Harassment and Intimidation

Ms. Gregory brings Count 4 for "cyber harassment & intimidation by Individual A," who she identifies only as "an attorney and the wife of Senator

---

[3] Having concluded Count 2 warrants dismissal for failure to state a claim on which relief can be granted, the Court does not consider whether dismissal is also required for failure to properly administratively exhaust her claims. *Def.'s Mot. to Dismiss* at 5-7.

Individual B." *Compl.* ¶ 23. It is axiomatic that a defendant may only be held liable for its own conduct and, here, Individual A is not a party to this suit, Ms. Gregory has pleaded no connection between Individual A and IQVIA, and the doctrine of respondeat superior does not apply. *Ashcroft*, 556 U.S. 662. The Court grants the motion to dismiss as to Count 4 for failure to state a claim on which relief can be granted. FED. R. CIV. P. 12(b)(6).

Having concluded no count pleaded by Ms. Gregory in her complaint withstands dismissal, the Court grants IQVIA's motion to dismiss in its entirety.

## VI. CONCLUSION

The Court GRANTS Defendant['s] Motion to Dismiss (ECF No. 5) Plaintiff Meko Gregory's State Court Record, Attach. 2, Civil Complaint for Retaliation, Wrongful Termination, Blacklisting, Cyber Harassment, and Fraudulent Acts (ECF No. 8-1); having granted the motion as to all Counts, the Court DISMISSES Ms. Gregory's complaint without prejudice.

SO ORDERED.

                                    /s/ John A. Woodcock, Jr.
                                    JOHN A. WOODCOCK, JR.
                                    UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2025